IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION

| | | |
|---|---|---|
| ROBERT EZELL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV 322-009 |
| | ) | |
| JERMAINE WHITE, Warden; JACOB | ) | |
| BEASILY, Deputy Warden; RICKY | ) | |
| WILCOX, Unit Manager; FREDDIE | ) | |
| CASTLE, Chaplain; SARGENT RILES; | ) | |
| MISTY WINTERS, Unit Manager; OFFICER | ) | |
| WHITE; | ) | |
| | ) | |
| Defendants. | ) | |

_____

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

_____

Plaintiff, an inmate at Telfair State Prison ("TSP") in Helena, Georgia is proceeding *pro se* and *in forma pauperis* ("IFP") in this case filed pursuant to 42 U.S.C. § 1983. Because he is proceeding IFP, Plaintiff's complaint must be screened to protect potential defendants. Phillips v. Mashburn, 746 F.2d 782, 785 (11th Cir. 1984); Al-Amin v. Donald, 165 F. App'x 733, 736 (11th Cir. 2006).

I.      **SCREENING OF THE COMPLAINT**

A.      **BACKGROUND**

Plaintiff names as Defendants:  (1) Jermaine White, Warden of TSP; (2) Jacob Beasily, Deputy Warden of TSP; (3) Ricky Wilcox, Unit Manager; (4) Freddie Castle, Chaplain; (5) Sargent Riles; (6) Misty Winters, Unit Manager; and (7) Officer White.  (Doc. no. 1, pp. 1,

26.)  Taking all of Plaintiff's allegations as true, as the Court must for purposes of the present screening, the facts are as follows.

During May 2020, members of the Blood gang intimidated Plaintiff in an attempt to garner money from him and his family.  (Id. at 7.)   Plaintiff refused to submit to the gang members' demands.  (Id.)  In response, the gang members forced Plaintiff to walk around the dorm like a dog and tied him to a table.  (Id. at 7-8.)  Despite an unidentified officer's presence in the booth, no staff member intervened.  (Id. at 8.)  The gang members eventually untied plaintiff and forced him to call his sister for money.  (Id.)  Plaintiff's mother and sister repeatedly calling the prison that same night to notify officials of these events, but no staff members came to the dorm to check on Plaintiff that night.  (Id.)

The next morning, Unit Manager Thomas, along with Lieutenant Tillmen and Cert Officer Wilcox, entered Plaintiff's dorm and escorted him to Deputy Warden Beasley's office.  (Id. at 9.)  While Plaintiff's mother listened on the phone, Deputy Warden Beasley asked Plaintiff to recount the events.  (Id. at 9-10.)  Plaintiff complied but was unable to provide names to the Deputy Warden.  (Id. at 10.)  Deputy Warden reviewed camera footage from the previous day and informed Plaintiff he would place him in Administrative Segregation pending a transfer.  (Id. at 11.)  Plaintiff expressed his concern for retaliation, and Deputy Warden Beasley assured Plaintiff he did not need to sign an official statement.  (Id. at 11.)  Sargent Robinson placed Plaintiff in Administrative Segregation dorm E-1, cell 235-T, with inmate Daniel Riggs.  (Id. at 12.)  No medical evaluation was performed on Plaintiff during his time in segregation.  (Id.)

The following month, Plaintiff submitted two inmate statement forms to Sargent Riles requesting protective custody.  (Id. at 13.)  Plaintiff received no response to his requests, and

2

therefore sent a letter to Jermaine White, the new warden, requesting protective custody for a third time.  (Id.)  Shortly thereafter, Sargents Briley and Riles forcefully transferred Plaintiff into another cell in the administrative segregation dorm.  (Id. at 14.)

In early 2021, Plaintiff was released from administrative segregation and returned to dorm A-2.  (Id. at 15.)  Unit Manager Thomas instructed Plaintiff to find a suitable cell rather than assigning Plaintiff a cell.  (Id.)  During his return to dorm A-2, a pair of inmates who were previously involved in the 2020 incident made threatening remarks toward Plaintiff.  (Id. 15-16.)  By February 2021, Plaintiff began to refuse housing due to the threats, and staff returned Plaintiff to administrative segregation.   (Id. at 16.)   Plaintiff requested protective custody through a statement form, but again received no response.  (Id.)

In the spring of 2021, TSP staff performed a random cell inspection of Plaintiff's dorm.  (Id. at 18.)   Deputy Warden Beasily and Cert Officer Wilcox handcuffed Plaintiff and his cellmate before entering the cell.  (Id.)  The officers searched Plaintiff's cell and confiscated his gym shorts and watch cap.  (Id.)  Plaintiff questioned whether the officers took his shorts, but in response the officers taunted Plaintiff concerning his fear of living in the general prison population.  (Id. at 19-20.)

In October 2020, Plaintiff told Dr. Bearden that he had two teeth that needed to be extracted, one tooth on top and one on bottom.  (Id. at 22.)  Dr. Bearden explained that he would take x-rays of both teeth and decide the appropriate course of action.  After reviewing the x-rays, Dr. Bearden removed the bottom tooth but not the top one, and instead instructed Plaintiff to take ibuprofen for any pain.  Plaintiff has since filed three more medical requests seeking extraction of the front tooth.  (Id.)  Plaintiff has received responses stating he has been scheduled, but has

yet to be seen.  (Id.)

Over this same period, Plaintiff requested religious materials from Chaplain Castle and Deputy Warden Beasily.  (Id. at 23.)  Chaplain Castle denied the request without explanation. (Id.)  The requested material complies with prison policies, and Plaintiff believes the denial is due to his Islamic faith.  (Id.)

Plaintiff filed grievances and appeals regarding his medical care and denial of religious rights.  (Id. at 3.)  Plaintiff is awaiting the appellate response on those grievances.  Plaintiff seeks compensatory and punitive damages, a permanent injunction, placement in protective custody, and to be free from retaliation by prison officials and inmates.  (Id. at 6.)

## B.    DISCUSSION

### 1.    Legal Standard for Screening

The complaint or any portion thereof may be dismissed if it is frivolous, malicious, or fails to state a claim upon which relief may be granted, or if it seeks monetary relief from a defendant who is immune to such relief.  See 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b).  A claim is frivolous if it "lacks an arguable basis either in law or in fact."  Neitzke v. Williams, 490 U.S. 319, 327 (1989).  "Failure to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard as dismissal for failure to state a claim under Fed. R. Civ. P. 12(b)(6)." Wilkerson v. H & S, Inc., 366 F. App'x 49, 51 (11th Cir. 2010) (citing Mitchell v. Farcass, 112 F.3d 1483, 1490 (11th Cir. 1997)).

To avoid dismissal for failure to state a claim upon which relief can be granted, the allegations in the complaint must "state a claim for relief that is plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the

4

plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. While Rule 8(a) of the Federal Rules of Civil Procedure does not require detailed factual allegations, "it demands more than an unadorned, the defendant unlawfully-harmed-me accusation." Iqbal, 556 U.S. at 678. An amended complaint is insufficient if it "offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action,'" or if it "tenders 'naked assertions' devoid of 'further factual enhancement.'" Id. (quoting Twombly, 550 U.S. at 555, 557). In short, the complaint must provide a "'plain statement' possess[ing] enough heft to 'sho[w] that the pleader is entitled to relief.'" Twombly, 550 U.S. at 557 (quoting Fed. R. Civ. P. 8(a)(2)).

Finally, the court affords a liberal construction to a *pro se* litigant's pleadings, holding them to a more lenient standard than those drafted by an attorney. Haines v. Kerner, 404 U.S. 519, 520 (1972); Erickson v. Pardus, 551 U.S. 89, 94 (2007). However, this liberal construction does not mean that the court has a duty to re-write the amended complaint. Snow v. DirecTV, Inc., 450 F.3d 1314, 1320 (11th Cir. 2006).

### 2. Plaintiff Fails to State a Failure to Protect Claim

Plaintiff alleges prison officials forewent their responsibilities to keep him safe, resulting in Plaintiff's fear of danger at TSP. "A prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eighth Amendment." Farmer, 511 U.S. at 828. Accordingly, a prison inmate has a constitutional right to be protected from violence and from physical assault by other inmates. Harmon v. Berry, 728 F.2d 1407, 1409

(11th Cir. 1984) (*per curiam*); Gullatte v. Potts, 654 F.2d 1007, 1012 (5th Cir. Unit B Aug. 1981).[1]  When officials become aware of a threat to an inmate's health and safety, the Eighth Amendment imposes a duty to provide reasonable protection.  Brown v. Hughes, 894 F.2d 1533, 1537 (11th Cir. 1990) (*per curiam*).   However, "[t]his does not mean that the constitutional rights of inmates are violated every time a prisoner is injured.  It would not be reasonable to impose such an absolute and clearly unworkable responsibility on prison officials."   Gullatte, 654 F.2d at 1012.   "[T]here must be at least some allegation of a conscious or callous indifference to a prisoner's rights" that would raise the tort to the level of a constitutional violation in order to state a section 1983 cause of action against prison officials for cruel and unusual punishment.  Williams v. Bennett, 689 F.2d 1370, 1380 (11th Cir. 1982) (citations omitted).

"Although 'prison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners,' not every instance of inmate on inmate violence 'translates into constitutional liability for prison officials responsible for the victim's safety.'"   Terry v. Bailey, 376 F. App'x 894, 895 (11th Cir. 2010) (*per curiam*) (citing Farmer, 511 U.S. at 833-34).  To establish an Eighth Amendment claim, a prisoner "must allege facts sufficient to show (1) a substantial risk of serious harm; (2) the defendants' deliberate indifference to that risk; and (3) causation."   Lane v. Philbin, 835 F.3d 1302, 1307 (11th Cir. 2016) (internal quotations omitted).  These three elements are evaluated in part by an objective standard and

---

[1]In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

in part by a subjective standard.  See Marbury v. Warden, 936 F.3d 1227, 1233 (11th Cir.

2019).

> As the Eleventh Circuit explained,
>
> When examining the first element—a substantial risk of serious harm—the court uses an objective standard.  The second element—the defendant's deliberate indifference to that risk—has two components:  one subjective and one objective.  To satisfy the subjective component, a plaintiff must produce evidence that the defendant actually (subjectively) kn[ew] that an inmate [faced] a substantial risk of serious harm.  To satisfy the objective component, a plaintiff must produce evidence that the defendant disregard[ed] that known risk by failing to respond to it in an (objectively) reasonable manner.

Caldwell v. Warden, FCI Talladega, 748 F.3d 1090, 1099 (11th Cir. 2014) (internal

citations and quotations omitted).

Mere negligent failure to protect and inmate from an attack does not justify § 1983

liability.  Brown, 894 F.2d at 1537.  Stated otherwise, Eighth Amendment liability cannot be

based on simple negligence or lack of due care, but rather requires some sort of conscious

disregard of a serious and imminent risk.  Farmer, 511 U.S. at 835-39; see also Adams v.

Poag, 61 F.3d 1537, 1543 (11th Cir. 1995) (requiring a plaintiff to show "more than mere

negligence," and stating that courts are to look for "obduracy and wantonness, not

inadvertence or error in good faith.").

Plaintiff does not allege he informed any named Defendant about problems with the

Blood gang or other inmates until after the October 2020 incident.  Thus, Plaintiff has not

alleged any Defendant knew about a substantial risk of serious harm to Plaintiff before

October 2020.  Moreover, Plaintiff was never attacked or injured after the night in question

and has only been threatened by other inmates.  Without Plaintiff demonstrating an actual

7

injury subsequent to informing prison officials of a risk, Plaintiff fails to establish the causation element of a failure to protect claim.

### 3.      Plaintiff Fails to State a Claim for Loss of Personal Property

Plaintiff's claims regarding loss of his personal property fail to state a federal claim for relief.  The Fourteenth Amendment does not protect against all deprivations of property, only against deprivations that occur "without due process of law."  Parratt v. Taylor, 451 U.S. 527, 537 (1981), *overruled on other grounds*, Daniels v. Williams, 474 U.S. 327, 330-31 (1986).  Georgia has created a civil cause of action for the wrongful deprivation of personal property.  O.C.G.A. § 51-10-1.  This statutory provision covers the unauthorized deprivation of an inmate's property by prison officials.  Grant v. Newsome, 411 S.E.2d 796, 799 (Ga. Ct. App. 1991).  The statutory cause of action constitutes an adequate post-deprivation remedy under Parratt.  See Byrd v. Stewart, 811 F.2d 554, 555 n.1 (11th Cir. 1987).  Thus, Plaintiff has an adequate remedy at State law, and he fails to state a valid § 1983 claim against a Defendant for the loss of any personal property.

### 4.      Plaintiff Fails to State an Eighth Amendment Deliberate Indifference Claim Against Defendants for His Dental Care

To state a claim for deliberate indifference to serious medical needs, Plaintiff must allege:  (1) he had a serious medical need – the objective component, (2) a defendant acted with deliberate indifference to that need – the subjective component, and (3) his injury was caused by a defendant's wrongful conduct.  Goebert v. Lee Cty., 510 F.3d 1312, 1326 (11th Cir. 2007); see also Thomas v. Bryant, 614 F.3d 1288, 1317 n.29 (11th Cir. 2010).

8

To satisfy the objective component, a prisoner must allege that his medical need "has been diagnosed by a physician as mandating treatment or . . . is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Goebert, 510 F.3d at 1326 (quoting Hill v. Dekalb Reg'l Youth Det. Ctr., 40 F.3d 1176, 1187 (11th Cir.1994)). To satisfy the subjective component, Plaintiff must allege a defendant not only had (1) subjective knowledge of a risk of serious harm, but he or she also (2) disregarded that risk, (3) by conduct that is more than mere negligence. See Melton v. Abston, 841 F.3d 1207, 1223 (11th Cir. 2016).

Furthermore, "not every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." Farrow v. West, 320 F.3d 1235, 1243 (11th Cir. 2003). As the Supreme Court has explained:

> [A]n inadvertent failure to provide medical care cannot be said to constitute "an unnecessary and wanton infliction of pain" or to be "repugnant to the conscience of mankind." Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

Estelle v. Gamble, 429 U.S. 97, 105-06 (1976). Thus, mere allegations of negligence or malpractice do not amount to deliberate indifference. Campbell v. Sikes, 169 F.3d 1353, 1363-72 (11th Cir. 1999) (explaining that medical malpractice cannot form the basis for Eighth Amendment liability); Harris v. Thigpen, 941 F.2d 1495, 1505 (11th Cir. 1991).

Neither does a mere difference in opinion between prison medical officials and the inmate as to the latter's diagnosis or course of treatment support a claim of cruel and unusual

punishment.  Harris, 941 F.2d at 1505; Waldrop v. Evans, 871 F.2d 1030, 1033 (11th Cir. 1989); Smith v. Fla. Dep't of Corr., 375 F. App'x 905, 910 (11th Cir. 2010) (*per curiam*). That is, deliberate indifference cannot be shown simply by arguing that an inmate wanted a different type of treatment.  Hamm v. DeKalb Cnty., 774 F.2d 1567, 1575 (11th Cir. 1985) ("Where a prisoner has received . . . medical attention and the dispute is over the adequacy of treatment, federal courts are generally reluctant to second guess medical judgments. . . ."). "The question of whether governmental actors should have employed additional diagnostic techniques or forms of treatment is a classic example of a matter for medical judgment and therefore not an appropriate basis for grounding liability under the Eighth Amendment." Butler v. Prison Health Servs., Inc., 294 F. App'x 497, 499 (11th Cir. 2008) (*per curiam*) (citing Adams v. Poag, 61 F.3d 1537, 1545 (11th Cir. 1995)).

Plaintiff does not allege any facts to suggest deliberate indifference to his serious medical needs by Dr. Bearden.  Estelle, 429 U.S. at 105-06.  After x-raying the two teeth that Plaintiff complained about, Dr. Bearden decided the best course of action was to extract the bottom tooth and leave the top tooth alone with instructions for Plaintiff to take ibuprofen for any pain.  Plaintiff's mere disagreement with the course of treatment does not constitute deliberate indifference.  As explained by the Eleventh Circuit, the Eighth Amendment does not mandate that the medical care provided to the prisoner "be perfect, the best obtainable, or even very good."  Harris, 941 F.2d at 1510 (11th Cir. 1991) (quoting Brown v. Beck, 481 F. Supp. 723, 726 (S.D. Ga. 1980) (Bowen, J.)).  Therefore, Plaintiff fails to state a claim for relief for deliberate indifference to his medical needs.

**5.      Plaintiff Fails to State a RLUIPA Claim Against Defendants**

Plaintiff alleges his religious freedom has been denied under the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc-1(a).  (Doc. no. 1, p. 5.)  In support Plaintiff states Chaplain Castle and Deputy Warden Beasley have denied him twice requested religious material.   (Id. at 23.)   Plaintiff describes the requested material as pertaining to the Islamic religion and "inside prison policy," but provides no other details on the material or its denial.  (Id.)

"To establish a prima facie case under RLUIPA, the plaintiff must demonstrate that his engagement in religious exercise was substantially burdened by the law, regulation, or practice he challenges." Smith v. Owens, 848 F.3d 975, 979 (11th Cir. 2017) (citing Knight v. Thompson, 797 F.3d 934, 943 (11th Cir. 2015)).  A substantial burden is "significant pressure which directly coerces the religious adherent to conform his or her behavior accordingly."  Smith v. Allen, 502 F.3d 1255, 1277 (11th Cir. 2007), *abrogated on other grounds*, Sossamon v. Texas, 563 U.S. 277 (2011).  The Eleventh Circuit has explained that to constitute a substantial burden on religious practice, "the government's action must be 'more than . . . incidental' and 'must place more than an inconvenience on religious exercise.' . . . That is, to constitute a substantial burden under RLUIPA, the governmental action must significantly hamper one's religious practice." Id.

Here Plaintiff fails to identify a law, regulation or practice to be challenged, and further he fails to demonstrate coercion conforming his behavior.  At most Plaintiff challenges the decisions made by Chaplain Castle and Deputy Warden Beasily but does not claim those decisions were compelled or instructed by a law, regulation,  or practice.

11

Additionally Plaintiff does not state the absence of the requested material produces coercive pressure to refrain from practicing his religion.  Thus Plaintiff fails to establish a prima facie claim under RLUIPA.

## II.      CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** Plaintiff's claims be **DISMISSED** for failure to state a claim upon which relief may be granted, and this civil action be **CLOSED**.

SO REPORTED and RECOMMENDED this 9th day of May, 2022, at Augusta, Georgia.

_____
BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA

12